IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MERLE A. PIERCE,

       Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. C15-0072

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.   *Pierce's Education and Employment Background* . . . . . . . . . . . . 3
     B.   *Vocational Expert's Testimony from Administrative Hearing*
        *Held on October 9, 2013* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.   *Pierce's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . . 7
     B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.   *Dr. Epp's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.   *Severe Impairment* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     C.   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.   **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Merle A. Pierce on August 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Pierce asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Pierce requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On November 16, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Pierce's Education and Employment Background

Pierce was born in 1953. The record is unclear regarding the grade Pierce completed in high school. He apparently did not graduate, as he testified at the administrative hearing that he earned a GED. From 1984 to 2008, Pierce worked as a

painter/wallpaper hanger. After 2008, he also performed part-time work as a cleaner/housekeeper in 2012.

## B. *Vocational Expert's Testimony from Administrative Hearing Held on October 9, 2013*

At the administrative hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual:

> capable of medium work . . . [and is able to] frequently climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extremes of humidity and pulmonary irritants.

(Administrative Record at 69.) The vocational expert testified under such limitations, Pierce could perform his past work as a cleaner/housekeeper. The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical, except the individual was limited to light work instead of medium work. Again, the vocational expert testified under the second hypothetical, Pierce could perform his past work as a cleaner/housekeeper. Finally, The ALJ provided the vocational expert with a third hypothetical which was identical to the first and second hypotheticals, except the individual was limited to sedentary work instead of medium or light work. The vocational expert responded under such limitations, Pierce would have no past relevant work, and no transferable skills.

## C. *Pierce's Medical History*

On January 26, 2011, Pierce was referred by Disability Determination Services ("DDS") to Dr. Robin L. Epp, M.D., for a consultative examination. Pierce reported his primary medical complaints were a diagnosis of Hepatitis C and COPD. In discussing his daily activities with Dr. Epp, Pierce asserted problems with physical activities. For example, Pierce stated walking the length of his trailer caused him breathing problems. Similarly, he testified walking from his residence to his car in the driveway would cause him to start "puffing." Upon examination, Dr. Epp determined Pierce was restricted to

4

occasional: standing, walking, stooping, bending, crawling, kneeling, using ladders, using his upper and lower extremities, and gripping/grasping. Dr. Epp also opined Pierce should rarely climb stairs. Dr. Epp further restricted Pierce to: no use of power tools, and no work around fumes, dust, hot or cold temperatures. Dr. Epp's primary reason for placing these limitations on Pierce was complications from COPD.

On March 14, 2011, Dr. Donald Shumate, D.O., reviewed Pierce's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Pierce. Dr. Shumate determined Pierce could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Shumate opined Pierce should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation. Dr. Shumate found no postural, manipulative, visual, or communicative limitations. In his assessment, Dr. Shumate also addressed Dr. Epp's opinions. Dr. Shumate gave "little weight [to Dr. Epp's opinion] as it is based on [Pierce's] report vs findings of fact."[2] Dr. Shumate also noted:

> [Dr. Epp's] opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion.

> [Dr. Epp's] opinion is an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of [Pierce's] functioning.

(Administrative Record at 99.) Ultimately, Dr. Shumate concluded:

> The credibility of severity of [Pierce's] allegations is significantly eroded due to symptoms that are markedly out of proportion to the minimal objective impairment and absence of longitudinal care. The preponderance of evidence supports

---

[2] Administrative Record at 97.

> that [Pierce] is capable of activity as noted in the RFC
> provided.

(Administrative Record at 99.)

On June 13, 2012, Dr. Laura Griffith, D.O., reviewed Pierce's medical records and provided DDS with a physical RFC assessment for Pierce. Dr. Griffith determined Pierce could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined Pierce could frequently climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith indicated Pierce should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation. Dr. Griffith found no manipulative, visual, or communicative limitations.

On August 20, 2012, Pierce met with Dr. Hussain Banu, M.D., regarding a liver biopsy associated with a diagnosis of the Hepatitis C virus. Pierce was first diagnosed with Hepatitis C in 2004. A liver biopsy was performed in May 2012, and showed chronic Hepatitis C with mild activity and severe focally bridging fibrosis. Dr. Banu recommended multiple medications as treatment.

On October 12, 2013, Pierce returned to Dr. Banu for a follow-up appointment regarding his diagnosis of Hepatitis C. Dr. Banu noted Pierce's treatment had been delayed due to Pierce needing to get his depression management under control and other hospital administrative delays. Upon examination, Dr. Banu continued Pierce's diagnosis of chronic Hepatitis C with mild activity and severe focally bridging fibrosis. At the appointment, Pierce and Dr. Banu had the following discussion regarding treatment:

> New HCV [(Hepatitis C Virus)] treatment may become
> available in the next several months, which may provide
> shorter duration of treatment with improved response rate.
> The option to await newer treatment regimens was discussed.

> He elected to hold on treatment at this time to await new HCV
> treatment regimens.

(Administrative Record at 463.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Pierce is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the

claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Pierce had not engaged in substantial gainful activity since March 19, 2011.[3] At the second step, the ALJ

---

[3] In his applications for disability insurance benefits and SSI benefits filed on May 3, 2012, Pierce alleged an onset date of June 8, 2008. Prior to seeking benefits on May 3, 2012, Pierce applied for benefits on November 19, 2010, again, with an onset date of June 8, 2008. The November 19, 2010 applications were denied at the initial level on March 18, 2011. Pierce did not appeal this initial denial. As a result, the ALJ determined "[t]he current request for hearing involves the same issues and the same parties as those involved in the prior applications which were denied finally on March 18, 2011. There is no new and material evidence or other basis for reopening the prior unfavorable determinations. The current request for hearing, insofar as it reflects the time period prior to March 18, 2011, is dismissed pursuant to the doctrine of *res judicata*. Consideration
(continued...)

concluded from the medical evidence that Pierce had the following severe impairment: COPD. At the third step, the ALJ found Pierce did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Pierce's RFC as follows:

> [Pierce] has the residual functional capacity to perform light work . . . except: he can climb, balance, stoop, and crawl frequently. He should avoid humidity and pulmonary irritants.

(Administrative Record at 33.) Also at the fourth step, the ALJ determined Pierce could perform his past work as a cleaner/housekeeper. Therefore, the ALJ concluded Pierce was not disabled.

### B. Objections Raised By Claimant

Pierce argues the ALJ erred in two respects. First, Pierce argues the ALJ failed to properly address the opinions of Dr. Epp, a consultative examining doctor. Second, Pierce argues the ALJ improperly determined his diagnosis of Hepatitis C was not a severe impairment.

### 1. Dr. Epp's Opinions

Pierce argues the ALJ failed to properly evaluate the opinions of his consultative examiner, Dr. Epp. Implicitly, Pierce also argues that by improperly discounting Dr. Epp's opinions, the ALJ's RFC assessment is flawed because it does not fully address his functional limitations. Pierce concludes this matter should be remanded for further consideration of the opinions of Dr. Epp, and how Dr. Epp's opinions relate to his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and

---

[3](...continued)
of this matter is limited to the time period commencing March 19, 2011[.]"
Administrative Record at 29-30.

vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be "based on all the evidence in the record[.]" *Krogmeier*, 294 F.3d at 1024 (citation omitted). Such evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the evidence in record when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Furthermore, in considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses

based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.* "). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

Additionally, an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). An ALJ may also order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted). The Social Security Administration "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a(b). For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Finally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order

that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ makes no mention of Dr. Epp or her opinions. In reviewing the opinions of two state agency, non-examining consultative doctors, the only medical providers besides Dr. Epp to offer an opinion on Pierce's health and functional abilities, the ALJ noted that the non-examining doctors gave "no weight" to the "examining source" because Pierce's physical examination was "normal."[4] The Court does not know what to make of this minimal discussion by the ALJ, and can only presume that the "examining source" referred to was Dr. Epp.

In her brief, the Commissioner asserts the ALJ did not consider Dr. Epp's opinions because Dr. Epp's opinions were *res judicata*. Prior to the application for disability benefits and SSI benefits presently before the Court, Pierce made a similar application for benefits that was denied at the initial review stage, and was never appealed. In that initial review, the state agency non-examining medical source opined that Dr. Epp's opinions should be given little weight. The Commissioner maintains the non-examining medical source's opinion that Dr. Epp's opinions were of limited value in the initial review of Pierce's first application for benefits was a final determination by the Commissioner. Thus, the Commissioner contends the opinions of Dr. Epp cannot be re-considered by the ALJ on Pierce's second application for disability benefits. In his reply brief, Pierce responds that by relying on the non-examining consultative medical source's opinion from

---

[4] *See* Administrative Record at 35.

the first, non-appealed, initial review, in Pierce's second application for benefits, the Commissioner "reopened" consideration of Dr. Epp's opinions.

The Court finds the arguments of both parties confusing and unhelpful. The simple fact of the matter is on October 19, 2013, at the administrative hearing, the ALJ admitted into the record Dr. Epp's opinions as medical evidence. Case law is clear, an ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be "based on all the evidence in the record[.]" *Krogmeier*, 294 F.3d at 1024 (citation omitted); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."). Accordingly, the Court believes the ALJ should have addressed Dr. Epp's opinions.

Moreover, Dr. Epp's opinions are significant to Pierce's disability determination. Pierce's primary reason for seeking disability is difficulty with COPD. The only examining medical source to offer any opinion on Pierce's functional abilities was Dr. Epp. This is significant because Dr. Epp opined that Pierce would have, among other things, difficulty standing and walking due to COPD, calling into question Pierce's ability to perform light work. Therefore, the ALJ should have addressed Dr. Epp's opinions and, if necessary, sought clarification of her opinions or ordered a second consultative examination to determine the effect of COPD on Pierce's functional abilities.

Having reviewed the entire record, he Court concludes that the ALJ failed in his duty to even address, let alone resolve, the conflicts, if any, between Dr. Epp's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Court also finds that the ALJ failed to fully and fairly develop the record with regard to Dr. Epp's

13

opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, the Court finds this matter should be remanded for further consideration of Dr. Epp's opinions, including consideration of how Dr. Epp's opinions relate to Pierce's RFC determination. Additionally, if the ALJ finds the issues relating to Pierce's COPD are undeveloped, he should seek clarification from Dr. Epp; or consider ordering a consultative examination if additional evidence is needed for making a final determination on whether Pierce is disabled. *See Stormo*, 377 F.3d at 806 (discussing reasons for seeking clarification from a treating or examining doctor); *Barrett*, 38 F.3d at 1023 (discussing reasons for ordering a consultative examination).

### 2. *Severe Impairment*

Pierce argues the ALJ erred in his assessment at step 2 of the sequential analysis by failing to find his Hepatitis C diagnosis to be a severe impairment. Pierce maintains the ALJ's determination that his Hepatitis C diagnosis is not a severe impairment is not supported by substantial evidence. Pierce concludes that the ALJ's failure to find his diagnosis of Hepatitis C to be a severe impairment at step 2 of the sequential analysis warrants reversal.

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). In other words, if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment. *Id*. (citation omitted). The burden is on the claimant to establish his or her impairment(s) is severe. *Id*. (citation omitted). According to the Eighth Circuit Court of Appeals "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that claimant failed to make this showing." *Id*. at 708 (citations omitted).

In his decision, the ALJ addressed Pierce's Hepatitis C diagnosis as follows:

> [Pierce] has nonsevere liver disease. In June 2013 [Pierce] elected to hold off on treatment until new treatment became available, which would last a shorter time and be more effective (Exhibit 14F, p. 6). Two doctors for the state agency reviewed the evidence made note of the most pertinent findings and determined that [Pierce's] history of hepatitis C was nonsevere (Exhibits 11 A, 12 A). The opinions are supported and are consistent with the medical evidence of record, as well as other evidence including [Pierce's] own report that he was no sure if he still had the problem (Exhibit 6F), and his ability to delay treatment (Exhibit 14F). The opinions of the state agency medical consultants have been given great weight. The record does not establish a medically determinable liver impairment with more than a minimal effect on [Pierce's] ability to perform basic work activities.

(Administrative Record at 32.)

While a liver biopsy performed in May 2012, led to a diagnosis of chronic Hepatitis C, Pierce was first diagnosed with Hepatitis C in 2004, and was not treated for it until January 2014. Furthermore, the medical evidence in record provides no indication or suggestion that Pierce is functionally limited by his Hepatitis C diagnosis. Therefore, having reviewed the entire record, the Court finds the ALJ thoroughly considered and properly addressed Pierce's diagnosis of Hepatitis C. Accordingly, the Court finds the ALJ's determination at step 2 of the sequential test, that Pierce's Hepatitis C diagnosis is not a severe impairment, is supported by substantial evidence. *See Anderson*, 696 F.3d at 793. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record, properly consider the opinions of Dr. Epp, and base his determination of Pierce's RFC on all the relevant evidence (Dr. Epp's opinions). Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Dr. Epp's opinions, including consideration of how Dr. Epp's opinions relate to Pierce's RFC determination and make his RFC determination based on all of the relevant evidence. If the ALJ finds the issues relating to Pierce's COPD are undeveloped, he should seek clarification from Dr. Epp; or consider ordering a consultative examination if additional evidence is needed for making a final determination on whether Pierce is

16

disabled. *See Stormo*, 377 F.3d at 806 (discussing reasons for seeking clarification from a treating or examining doctor); *Barrett*, 38 F.3d at 1023 (discussing reasons for ordering a consultative examination).

### *VI. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 26ᵗʰ day of July, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA